SHAMROCK OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22752. Promulgated January 24, 1934.

*Harry C. Weeks, Esq.*, and *John B. King, Esq.*, for the petitioner.
*S. S. Faulkner, Esq.*, and *R. B. Cannon, Esq.*, for the respondent.

OPINION.

LANSDON: The respondent asserted deficiencies in income and excess profits taxes for the years 1919 and 1920, in the respective amounts of $36,476.09 and $118,513.16. The petitioner contends (1) that the appeal has not been prosecuted by the taxpayer; (2) that the determination and collection of the deficiencies are barred by the statute of limitations; (3) that the deductions for amortization of leases in both years should be allowed; (4) that certain notes received for shares of capital stock should be included in the computation of invested capital for each of the taxable years; and (5) that the Shamrock Oil Co. and the joint stock association operating under the name of Chapman-Clark-Harbin, Trustees, were affiliated in 1920. At the hearing issues (3) and (4) were settled by stipulating that the petitioner was entitled to deductions from gross income for 1919 and 1920 in the respective amounts of $71,622.79 and $27,047.85, representing losses from amortization of nonproducing oil and gas leases, and that notes totaling $490,123.95 should be included in the computation of petitioner's invested capital for each of the years under review. The petitioner has abandoned its fifth allegation of error. It follows, therefore, that only issues (1) and (2), relating respectively to the jurisdiction of the Board and the question of limitation, remain for consideration.

The substance of petitioner's appeal as to issue (1) is that the proceeding was not instituted and has not been prosecuted by the taxpayer against which the respondent has asserted the deficiencies in question. As to this issue, the material facts are undisputed and are submitted for our decision as to their legal effect, and may be stated as follows:

The Shamrock Oil Co., existing and doing business under that name in the years 1919 and 1920, was a joint stock association created by a declaration of trust and articles of association executed on March 15, 1919, in conformity with the law of Texas. It was organized at Waxahachie, Ellis County, Texas, and the declaration of trust and articles of association were filed for record in that county. The management and control of its business were vested in a board of trustees and the following parties were named as trustees in the original instrument: C. H. Clark, T. H. Harbin, J. H. Miller, J. W. Rosson, Lynn D. Lasswell, R. W. Getzendaner, W. K. Ward, R. J.

912

Coleman, and Homer N. Chapman. These parties continued to act as trustees during the entire life of this concern. It was organized for the purpose of operating an oil business and during the years 1919 and 1920 was so engaged, and for such years filed timely income and profits tax returns on May 20, 1920, and May 19, 1921, respectively. Its capital consisted of 12,500 shares of stock of the par value of $100 per share.

A second joint stock association, or common law trust, was organized some time in the fall of 1919. The formal organization was completed on March 15, 1920, a declaration of trust being executed as of that date, and filed for record in the deed records of Ellis County, Texas. The name of this company was designated in the declaration of trust as Chapman-Clark-Harbin, Trustees. The management and control of this company were vested in a board of trustees, and such trustees named in the instrument creating it were Homer N. Chapman, T. H. Harbin, W. K. Ward, R. W. Getzendaner, R. J. Coleman, J. H. Miller, O. B. Dunaway, and Lynn D. Lasswell. This concern was also created for engaging in the oil business and was actively so engaged during the year 1920 and filed an income tax return for that year.

In the fall of 1920 negotiations were entered into between the Shamrock Oil Co. and Chapman-Clark-Harbin, Trustees, looking towards a consolidation of the two companies. An offer was made by Shamrock to purchase the properties of Chapman-Clark-Harbin, Trustees, and the offer was declined. Later an offer was made by Chapman-Clark-Harbin, Trustees, to acquire the properties of Shamrock. Such offer was accepted and on January 3, 1921, a meeting of the stockholders of the Shamrock Oil Co. was held, pursuant to the call of the trustees. At that meeting the stockholders voted to ratify the action of the trustees in accepting the offer of Chapman-Clark-Harbin, Trustees, to purchase its assets, and, at the same meeting, by a unanimous vote, a resolution was passed dissolving the company and constituting and appointing its trustees as liquidating trustees for the purpose of carrying into effect the sale of the properties.

On January 4, 1921, the stockholders of the Shamrock Oil Co. were addressed a form letter in which the action of the stockholders at the meeting held on January 3, 1921, was set forth, and giving the option to such stockholders to receive in lieu of cash a like number of shares of beneficial interest in the Chapman-Clark-Harbin, Trustees, for their shares of stock. Thereafter such stockholders elected to take interests in Chapman-Clark-Harbin, Trustees, and exchanged stock for certificates of beneficial interest in that company. On January 3, 1921, the trustees of Chapman-Clark-Harbin, Trustees, at a meeting held at Waxahachie, Texas, changed the name

of Chapman-Clark-Harbin, Trustees, to "Shamrock Oil Company," which thereafter did business under the name of and was known as the Shamrock Oil Co., and is the petitioner herein. For the year 1921 and subsequent years it filed income tax returns under that name.

On April 4, 1922, J. E. Dunaway was elected a trustee and vice president of the petitioner. On May 30, 1924, at a meeting of the trustees of the Shamrock Oil Co., it was voted that Dunaway be requested to go to the field and take active charge of the operations of the company. Acting under such authority, Dunaway removed to Wichita Falls, Texas, in July 1924 and took active charge of the financial end of this organization. Clark, who had been running the company up to that time, was displaced by Dunaway and his authority and duties were restricted to overseeing production. In April 1925 the petitioner sold all its assets and properties to the Prairie Oil Co. and quit business. Clark had nothing further to do with the company, but Dunaway remained in Wichita Falls, Texas, to wind up its affairs. While so engaged the waivers relied upon by the respondent were signed by Dunaway, and the 60-day letter upon which this appeal is predicated was received by him at the office of the petitioner and he executed the waivers at the request of the revenue agent, who advised him it was the best thing he could do. He thereafter employed accountants and counsel and authorized an appeal as to the additional tax determined by the respondent for the years 1919 and 1920.

The 60-day letter upon which this appeal is predicated was addressed to "Shamrock Oil Company, Wichita Falls, Texas" and bears the date of November 30, 1926. It shows on its face that it is the determination of the income tax liability of the concern to which it was addressed. It further conclusively shows that such tax liability was being asserted for the years 1919 and 1920. It does not in terms determine the income tax liability of the petitioner as transferee of the assets operated by the first group of trustees. The record shows that later, on February 29, 1932, a 60-day letter was mailed to the petitioner, seeking to hold it liable as a transferee of the assets operated by the first group of trustees.

Three waivers are in evidence. The first was executed in March 1925 and purports to extend the time for assessment of any additional taxes due by the Shamrock Oil Co. for the year 1919 until December 31, 1925. It was executed "Shamrock Oil Company, Taxpayer, by J. E. Dunaway, Vice President." The second waiver was executed on November 28, 1925, extending the period of assessment for the years 1919 and 1920 until December 31, 1926. It was also signed "Shamrock Oil Company, Taxpayer, by J. E. Dunaway, Vice

President." The third waiver was dated November 30, 1926, and purported to extend the time for assessment for the years 1919 and 1920 until December 31, 1927. This waiver was executed "Shamrock Oil Company, Taxpayer, by C. H. Clark, Vice President." All of these waivers were executed several years after the transactions of January 3 and 4, 1921. J. E. Dunaway was not one of the original group of trustees.

In the circumstances here the respondent contends that any denial that the taxpayer is not before the Board is estopped by the acts of Dunaway, who executed the first two waivers, authorized this appeal, and verified the petition herein. The Commissioner relied on such acts and acted accordingly. If he had been advised of the facts alleged by the petitioner, he could have determined that the petitioner was liable as a transferee for the unpaid Federal income taxes resulting from the operation of the first group of trustees. Through the acts of Dunaway, a vice president and one of the trustees of the petitioner, respondent was led to believe that the appeal had been taken by the taxpayer and in due time would be heard and decided on the merits. In our opinion this position is very strongly supported by the record and by our report in *Jere R. Downing*, 26 B.T.A. 1115. The petitioner accepted the deficiency letter as a notice of its own liability, and acted thereon by filing the appeal therefrom as provided by law. We are of the opinion that it should not now be heard in a plea to void its own acts and thereby bar the respondent from all remedy for the collection of taxes admittedly due and for which it is liable in law or at equity.

Even if the facts set out above are insufficient to estop petitioner from asserting that it is not the taxpayer, we are of the opinion that it is properly before the Board as a transferee of the assets of the first group of trustees, which it acquired on January 3, 1921, and by resolution provided for payment therefor either in cash or its own certificates of beneficial interest as the stockholders of the vendor company might elect. The record is clear that all, or practically all, elected to receive such certificates in lieu of cash. It is therefore apparent that the assets as to which the asserted tax liability attaches were acquired by the petitioner without any consideration other than its own certificates of beneficial interest. After the distribution of such certificates to the stockholders of the vendor trust, that concern was without assets and was insolvent. In our opinion it is not material that the notice of deficiency was not in so many words a determination of liability under section 280 of the Revenue Act of 1926. It was a determination of tax liability as to the income of a concern whose assets had passed to the recipient without consideration and was accepted as such by proper persons officially

acting for the petitioner, which, in these circumstances, we believe, is properly before the Board as a transferee of assets impressed with a trust for unpaid Federal taxes. It, therefore, becomes immaterial that the appeal was not taken and prosecuted by persons authorized to act for the first group of trustees. *San Joaquin Fruit & Investment Co.*, 52 Fed. (2d) 123; *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463; *Jere R. Downing, supra; Commissioner* v. *Nichols & Cox Lumber Co.*, 65 Fed. (2d) 1009; *Pittsburgh Terminal Coal Corp.* v. *Heiner*, 56 Fed. (2d) 1072.

The petitioner also pleads that even if it is properly before the Board, the statute of limitations has tolled the liability asserted as to each of the years 1919 and 1920. The returns in question were filed on May 20, 1920, and May 19, 1921, respectively. Under the Revenue Act of 1918 the statute of limitations applicable thereto would run on May 20, 1925, and May 19, 1926. The petitioner became liable for the unpaid taxes here in question on January 3, 1921, when, without other consideration than its own certificates of beneficial interest, it acquired the assets impressed with a trust for unpaid Federal income taxes for 1919 and 1920. *Nichols & Cox Lumber Co., supra.* Thereafter such liability was its own and its officers were empowered to make legal agreements in respect thereto. Dunaway exercised such power when he signed the waivers. In so doing he was not acting for a prior taxpayer or transferor, but for the petitioner, whose liability at law or in equity had become absolute at January 3, 1921, and against which the bar of limitations had not then been dropped. The fact that section 280 had not been enacted at the date of the execution of either waiver is not material, as the liability of the petitioner was in no wise affected by that enactment, which merely provides for an additional method of collecting a liability at law or in equity for Federal income taxes. *Phillips* v. *Commissioner*, 283 U.S. 589. The waivers in question extended the period of limitations to December 31, 1926. The deficiency notice was mailed on November 30, 1926, and was well within the period as so extended.

The parties have stipulated that the taxpayer is entitled to deductions from gross income in 1919 and 1920 in the respective amounts of $71,622.79 and $27,047.85 and that it is entitled to have the amount of $490,123.95 included in the computation of invested capital for the years 1919 and 1920. Such stipulation will be applied to the recomputation of the asserted deficiencies. The petitioner's motion to dismiss is denied.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.